# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **PALMA SUE HOLFIELD,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:09CV00034 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Clarence E. "Bud" Phillips, Clarence E. Phillips, P.C., Castlewood, Virginia, for Plaintiff; Quinn Niblack Doggett, Assistant Regional Counsel, Eric P. Kressman, Acting Regional Chief Counsel, Region III, and Rafael Melendez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner of Social Security (the "Commissioner") and remand for further consideration.

I

Plaintiff Palma Sue Holfield filed this action challenging the Commissioner's decision to deny her claim for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-34 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Holfield protectively filed for benefits on October 19, 2005, alleging that her disability began that day. Her claim was denied initially and upon reconsideration. An administrative law judge ("ALJ") held a hearing on October 25, 2006, at which both Holfield, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Holfield's claim on December 12, 2006. The Commissioner's decision became final when the Social Security Administration's Appeals Council denied Holfield's request for review on February 27, 2009. Thereafter, Holfield filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross-motions for summary judgment and have fully briefed and orally argued the issues. The case is now ripe for decision.

II

Holfield was forty-eight-years old at the time of the ALJ's decision, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2009). Holfield completed the tenth grade in school. Before the alleged onset of her disability, Holfield had worked as a food preparation worker and a cashier.

Holfield claims her disability is caused by a combination of ailments including back, leg, and neck pain, depression, muscle spasms, and restless leg syndrome. She presented medical records to the ALJ at the administrative hearing to substantiate her

claim. After reviewing Holfield's medical history, the ALJ determined that Holfield suffered from the severe impairments of traumatic and degenerative joint disease, residuals of right-arm fracture, restless leg syndrome, chronic depression, and generalized anxiety disorder. The ALJ concluded none of these impairments qualified as any of the agency's listed disabilities, either alone or in combination.

Based on these findings, the ALJ held Holfield had the residual functional capacity to perform simple unskilled light-exertion work. This work must have a "sit/stand option" (R. at 25), allowing her to change positions every half-hour, and requiring only occasional balancing, handling, reaching overhead with her right arm, climbing of stairs and ramps, stooping, kneeling, crouching, crawling, or operation of arm or hand controls. The work must involve no more than two hours of walking or standing, and she must avoid any exposure to hazardous heights and moving machinery.

During the hearing, the ALJ posited a hypothetical to the VE, asking whether someone with Holfield's residual functional capacity would be able to perform any jobs in the regional or national economy. The VE testified that someone with those limitations would be able to perform the duties of a security systems monitor, ticket taker, and usher. According to the VE, there were approximately 8,000 such jobs in the region and over 260,000 in the national economy. Relying on this testimony, the

ALJ concluded that Holfield was able to perform work that exists in significant numbers in the national economy and was therefore not disabled.

Holfield claims the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I agree.

III

The plaintiff bears the burden of proving that she is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any

point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), (e) (2009); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). If the claimant can perform work that exists in significant numbers in the national economy, then she does not have a disability. 20 C.F.R. § 404.1566(b) (2009).

I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

A

Holfield first contends that the ALJ's finding that her severe impairment of traumatic and degenerative joint disease does not meet or medically equal the disability listed under 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2009), is not supported by substantial evidence. I find this argument without merit.

Section 1.04 provides the criteria for a disabling disorder of the spine:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b.

*Id.* Substantial evidence supports the conclusion that Holfield's impairment does not meet these criteria. Holfield does not allege to be suffering from spinal arachnoiditis, therefore she does not meet the requirements of § 1.04B. As for § 1.04A, there is no

evidence Holfield has nerve root compression. In fact, Holfield admits the MRI from October 6, 2005, showed "[d]isc bulges without neural impingement." (Pl.'s Br. Supp. Summ. J. 5.) Holfield was diagnosed with spinal stenosis. However, to qualify as a disability under § 1.04C, the stenosis must cause an "inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04C (2009). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s)." *Id.* § 1.00B2b(1). Holfield's treating physician, Joselin Tacas Tacas, M.D., stated that Holfield did not have to use an assistive device when standing or walking. (R. at 470.) Therefore, substantial evidence supports the ALJ's conclusion that Holfield's spinal impairments did not meet or equal the criteria under any of the disabling spinal disorders of § 1.04.

B

Holfield also claims that the ALJ erred by failing to give controlling weight to the opinion of Dr. Tacas Tacas, the only examining and treating physician to offer an opinion as to Holfield's ability to work.

It is true that the opinion of a treating physician is generally accorded greater weight by the ALJ than an opinion from a non-treating physician. *See* 20 C.F.R. § 404.1527(d)(2) (2009). However, the ALJ is not required to give a treating

physician's opinion controlling weight, as Holfield asserts. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." (citation and internal quotation marks omitted)). The treating physician's opinion may only be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2) (2009).

Dr. Tacas Tacas filled out a lumbar spine residual functional capacity questionnaire on August 15, 2006, in which she marked that Holfield was unable to sit for more than five minutes at a time, unable to stand for more than fifteen minutes at a time, and was only able to sit, stand, and walk for a total of less than two hours in an eight-hour work day. Such a limited capacity would certainly render Holfield disabled, but the ALJ rejected these findings stating, "Since [Dr. Tacas Tacas] has documented no clinical testing for these severe limitations (and others) and since the rest of the record fails to support these statements, the undersigned gives little weight to any of the opinion." (R. at 23.)

The ALJ was not required to give Dr. Tacas Tacas's conclusions controlling weight because they were inconsistent with other substantial evidence. Two state

agency physicians, who did not examine Holfield but did review all of her medical records, found that Holfield could stand or walk for about six hours per eight-hour workday and sit for about six hours per eight-hour work day.

Furthermore, Dr. Tacas Tacas's conclusions were not "well-supported" by clinical tests. The only recent clinical test performed on Holfield's spine was an MRI performed on October 6, 2005, and it showed "mild foraminal stenosis" at C4-5, "slight" neural foraminal stenosis at C5 through C7, "minimal" disc bulge at C3-4 and C7-T1, and posterior spur formation and disc protrusion at C4-5 that does "not impinge on cervical cord." (R. at 431-32.) The radiology report does not indicate any "marked" or "severe" issues with Holfield's spine, and the handwritten note on the report indicated that Holfield was advised to follow up with neurosurgery if her pain increased, which she never did. (R. at 431.) X rays taken that same day of Holfield's knees and shoulders showed no abnormalities. Therefore, Dr. Tacas Tacas findings were not required to be given controlling weight.

Nevertheless, as I will discuss, I find that the ALJ erred by concluding that Holfield's allegations regarding the severity of her pain and the extent of her limitations were not entirely credible. Accordingly, I find the ALJ also erred in completely discounting Dr. Tacas Tacas's findings on the lumbar spine questionnaire.

C

"[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. Once that has been established, the ALJ must determine the extent to which the pain affects the claimant's ability to work. *Id.* at 595. The ALJ must evaluate

> all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* (citations and internal quotation marks omitted). As long as there is a medically determinable impairment that could cause the purported pain, "allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain." *Id.* at 593. Generally, "[b]ecause [an ALJ] ha[s] the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning [questions of credibility] are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). In this case,

however, the ALJ made many factual and legal errors in her evaluation of Holfield's pain allegations that cannot be ignored despite this deferential review.

The ALJ found that Holfield's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 25.) Thus, Holfield met the threshold test for evaluating allegations of pain, but according to the ALJ, "[t]he documentary medical evidence, the testimony of an impartial vocational expert, and even [Holfield's] own testimony regarding daily activities do not support [her] allegations regarding the extent of her limitations." (*Id.*) However, these three reasons are not proper bases for disbelieving Holfield's complaints.

The first problem with the ALJ's analysis is that she claimed the testimony of the VE disproved Holfield's purported physical limitations caused by pain. A VE, though, cannot help determine the veracity of a claimant's pain allegations. The VE is an expert in vocational issues, such as what skills are required to perform certain jobs, but the VE has no expertise in medicine and is not qualified to determine whether a claimant's purported physical limitations are consistent with her medical impairments. Moreover, even if the VE were qualified to testify about this subject, the VE did not do so here.

The ALJ also claimed that Holfield lacked credibility because, contrary to Holfield's allegations of disabling pain, Holfield "still does many household tasks, including most of the meal preparation and washing the dishes, as well as many of the tasks required to help raise her two-year-old granddaughter." (*Id.*) This is not an accurate representation of the record. Holfield testified that her husband does all the cooking and vacuuming and that she washed dishes sometimes — but it took her approximately two hours because she needed to take breaks — and she did some laundry. Holfield never testified that she did any meal preparation, and indeed, her previous work included food preparation duties, which she specifically said she could no longer perform. The remaining household chores were done by her daughter or daughter-in-law. Also, the granddaughter who lived with her was seven years old, not two. This is a significant factual error because it is clearly less physically taxing to take care of a seven-year-old who, unlike a two-year-old, is normally able to walk long distances, carry her own belongings, feed herself, go to the bathroom by herself, and dress herself.

Finally, the ALJ cited medical evidence as a reason for disbelieving Holfield's alleged limitations. Specifically, the ALJ wrote, "There is no medical support for [Holfield's] allegations regarding the severity of her loss of ability to concentrate due to mental limitations." (*Id.*) However, this does not address in any way Holfield's

alleged limitations due to pain. Thus, the ALJ failed to cite any proper basis for discrediting Holfield's claims of severe, disabling pain. Accordingly, I will remand this case to the Commissioner for further consideration of the record to determine whether Holfield's claims of pain and resulting physical limitations are credible and what weight should be accorded to Dr. Tacas Tacas's questionnaire in light of that credibility finding.

D

Holfield also challenges the ALJ's determination of her residual functional capacity, arguing that when the proper residual functional capacity was presented to the VE, the VE testified that Holfield was unable to perform any work in the nation's economy. I do not need to address this argument directly because I find that the ALJ's evaluation of Holfield's allegations of pain was not supported by substantial evidence, and thus, I necessarily find that the residual functional capacity was not supported by substantial evidence and will need to be reevaluated on remand.

IV

For the foregoing reasons, I find the ALJ's decision is not based on substantial evidence and the case must be remanded for further administrative proceedings

pursuant to 42 U.S.C.A. 405(g), sentence four.  An appropriate final judgment will be entered.

DATED: June 25, 2010

　/S/ JAMES P. JONES
Chief United States District Judge